JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Amen Dhyllon

**(b)** County of Residence of First Listed Plaintiff: Montgomery (PA)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel J. Auerbach & Donald Benedetto
Gamburg & Benedetto
1500 JKF Blvd., Suite 1203 Philadelphia, PA 19102; (215) 567-1486

## DEFENDANTS
Secretary of the Department of Health and Human Services

County of Residence of First Listed Defendant: Washington D.C.
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | | **LABOR** / **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | | ☐ 710 Fair Labor Standards Act / ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | | ☐ 720 Labor/Management Relations / ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | | ☐ 740 Railway Labor Act / ☐ 864 SSID Title XVI | |
| | | | ☐ 751 Family and Medical Leave Act / ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | ☐ 790 Other Labor Litigation | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 791 Employee Retirement Income Security Act / **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty / **Other:** | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
5 U.S.C. § 706
Brief description of cause:
Plaintiff challenges the Secretary's refusal to remove a report from the NPDB databank.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____  DOCKET NUMBER _____

DATE: 09/18/2020
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __Lower Merion Township, Pennsylvania__

Address of Defendant: __200 Independence Avenue, S.W. Washington, D.C. 20201__

Place of Accident, Incident or Transaction: __n/a__

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☐

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __09/18/2020__   _/s/ Daniel Atwell_   Pa. __316856__
                       *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    *(Please specify):* __APA__

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: __09/18/2020__   _/s/ Daniel Atwell_   Pa. __316856__
                       *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Amen Ohyllon                     :           CIVIL ACTION
                                 :
            v.                   :
                                 :
Secretary                        :           NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.               ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (X)

| 9/18/2020 | Daniel J. Auerbach | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 567-1486 | 215-940-6661 | dan@gamburglaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Amen Dhyllon<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Alex Michael Azar, II in his official capacity as the Secretary of Health and Human Services<br><br>　　　　　Defendant. | No. _____<br><br>Civil Action |

## COMPLAINT

Plaintiff Amen Dhyllon ("Dr. Dhyllon") brings this Complaint against the Secretary of Health and Human Services under the Administrative Procedures Act, 5 U.S.C. § 500, *et seq.*

### INTRODUCTORY STATEMENT

1.　　Dr. Dhyllon is an orthodontist. An insurance company terminated his contract for providing orthodontic services, allegedly for cause. It filed a report about the contract termination with the National Practitioner Database (the "NPDB"), a federal agency that maintains a database of adverse actions taken against medical practitioners. Yet the insurance company refused to explain why it terminated Dr. Dhyllon's contract. It refused to provide him with any due process prior to terminating his contract. And the report itself was false: it claimed that there were pre-existing adverse reports against Dr. Dhyllon in the NPDB or on file with the State Dental Board, when no such reports existed and when the insurance company knew that no such reports existed.

2.　　Each of these three failings alone required the Secretary to remove the report from the database under his own regulations. Yet the Secretary refused to do so. Dr. Dhyllon now has no choice other than to ask this Court to set aside the Secretary's arbitrary and capricious action

and to end the damage to Dr. Dhyllon's career that the insurance company's report has caused.

## THE PARTIES

3.  Dr. Dhyllon is a natural person who resides in Lower Merion Township, Pennsylvania which is in the Eastern District of Pennsylvania.

4.  Dr. Dhyllon operates an orthodontic practice within the Eastern District of Pennsylvania.

5.  Defendant Alex Michael Azar, II is the Secretary of Health and Human Services (the "Secretary"), who Dr. Dhyllon sues in his official capacity.

## THE NPDB

6.  In 1986, Congress enacted the Healthcare Quality Improvement Act of 1986.

7.  Congress was worried about the threat of medical malpractice and the need to respond to "incompetent physicians." 11 U.S.C. § 11101(1)–(2).

8.  Congress believed that "effective professional peer review" was necessary to fix the problem. 11 U.S.C. § 11101(3).

9.  To that end, Congress required reports to be made to the federal government when a payment was made on a malpractice claim, when a medical board took disciplinary action against a doctor, and when certain health-care entities disciplined a doctor. 42 U.S.C. §§ 11131–11133.

10. Over time, Congress expanded the scope of mandatory reporting.

11. The NPDB maintains these reports. 45 C.F.R. § 60.1. NPDB makes them available to certain healthcare entities under certain conditions. 45 C.F.R. § 60.18.

12. Healthcare entities then can rely on NPDB reports in making decisions about providers, such as whether to allow a practitioner to participate in an insurance network. In short, NPDB reports can have substantial effects on a practitioner's career.

13. A practitioner may dispute the accuracy or propriety of the filing of a report. 45 C.F.R. § 60.21(a).

14. In accordance with NPDB regulations, the Secretary is responsible for assessing the accuracy or propriety of the filing of a report. 45 C.F.R. § 60.21(c)(2).

15. The NPDB has adopted guidance about the reporting and dispute-resolution process, which it calls the NPDB Guidebook.[1]

## APPLICABLE LEGAL PROVISIONS

16. The termination of a contract between an insurance company and a practitioner for the provision of medical services is reportable to NPDB under a single provision of law.

17. Congress requires health-care providers, including health-insurance companies, to report to NPDB all "final adverse actions" that they take against healthcare practitioners. 42 U.S.C. § 1320a-7e(a).

18. "Final adverse actions" include "Other adjudicated actions or decisions that the Secretary shall establish by regulation." 42 U.S.C. § 1320a-7e(g)(1)(A)(v).

19. Here, the NPDB believes that the termination of Dr. Dhyllon's contract was an "Other adjudicated action[] or decision[]." (A. 3) (citing 45 C.F.R. § 60.16(a)).[2]

20. The Secretary defined "Other adjudicated actions or decisions" as, relevant here, "formal or official final actions taken against a health care practitioner . . . by a . . . health plan, which include the availability of a due process mechanism, and are based on acts or omissions that affect or could affect the payment, provision, or delivery of a health care item or service." 45 C.F.R.

---

[1] The Guidebook is available at npdb.hrsa.gov/resources/NPDBGuidebook.pdf (last visited Sept. 7, 2020).

[2] This Complaint describes the dispute based solely on the administrative record before the Secretary. Dr. Dhyllon has submitted what he believes to be the entire administrative record with sequential page numbering. The citations to "A. #" refer to the sequential page numbers of the Appendix that Dr. Dhyllon will file under seal, as NPDB regulations appear to require.

§ 60.3.

21. The definition also discusses the necessary due process. A "hallmark of any valid adjudicated action or decision is the availability of a due process mechanism." 45 C.FR. § 60.3. A process that complies with 42 U.S.C. § 11112(b) is sufficient. *Id.*

22. 42 U.S.C. § 11112(b) requires notice prior to taking action against a provider with an explanation of the basis for the proposed action, a right to a hearing, notice of the hearing, the right to counsel, the right to present witnesses and evidence, the right to cross examination, the right to a disinterested decisionmaker, and the right to submit post-hearing briefing.

23. After an "Other adjudicated action[] or decision[]" is made adverse to a practitioner, the NPDB specifies how the insurance company must report it to the NPDB.

24. The insurance company must explain what it did, and then must provide a variety of information. Critical here is that the insurance company must provide "[a] narrative description of the acts or omissions and injuries upon which the reported action was based." 45 C.F.R. § 60.16(b) (requiring reports of "Other adjudications actions or decisions" to comply with § 60.15(b)); 45 C.F.R. § 60.15(b)(4)(i).

## THE UNDERLYING DISPUTE

25. Dr. Dhyllon had a contract to provide orthodontic services with Guardian Life Insurance ("Guardian"). (A. 2: Decision).

26. On October 9, 2019, Guardian's Credentialing Committee held a meeting; without objection, it voted to terminate Dr. Dhyllon's contract. (A. 50: meeting minutes).

27. The meeting minutes do not further explain that decision. (*Id.*).

28. Guardian did not provide Dr. Dhyllon with any notice of its intent to terminate his contract or provide any pre-termination process at all.

29. Instead, the next day, on October 10, 2019, Guardian wrote a letter to Dr. Dhyllon

– 4 –

to inform him for the first time of the decision that it had already made. (A. 22).

30. The letter explained that: "a review of your records was performed. Guardian detected a questionable pattern of services being performed by your office and upon further investigation, identified a Quality of Care concern. The Quality of [Care] Concern pertains to the current orthodontic investigation. The issue was presented to the Credentialing Committee for review on October 9, 2019, and the Credentialing Committee voted to terminate your Provider Agreement effective October 9, 2019." (*Id.*).

31. On October 16, 2019, Dr. Dhyllon's counsel wrote a letter to Guardian challenging the termination and appealing it. (A. 23).

32. On October 25, 2019, Guardian filed a report with the NPDB explaining that it had terminated Dr. Dhyllon's contract without providing any due process first. (A. 8–10).

33. Critical to this lawsuit, the report explains Dr. Dhyllon's alleged wrongdoing in full as follows: "Based on a review of information obtained from our query of the National Practitioner Data Bank and/or the State Dental Board, the credentialing committee voted to terminate, Amen Dhyllon, DDS, from network participation." (A. 9).

34. In fact, there was no such adverse "information." Guardian had received printouts from both the NPDB and the State Dental Board. Both indicated no reports against Dr. Dhyllon or any adverse information. (A. 54–55).

35. On November 11, 2019, Dr. Dhyllon's counsel sent a follow-up letter as to the status of the appeal. (A. 26: Nov. 21, 2019 letter) (discussing the letter, which is not of record).

36. The same day, Dr. Dhyllon disputed the report with NPDB *pro se*. (A. 9–10: subject statement).

37. Dr. Dhyllon's *pro se* filing explained that he did not understand why Guardian had terminated his contract and that Guardian had not explained that to him. Dr. Dhyllon explained

that he treats patients well and has had excellent results for his patients. He explained his frustration: "This abrupt termination of the contract has devastated me emotionally and psychologically especially when I don't know what did I do to deserve this abrupt termination. I don't even know what have I done wrong." (*Id.*)

38. Guardian would never explain what allegedly happened or its concerns.

39. On November 21, 2019, Dr. Dhyllon's counsel sent another letter. That letter explained that Dr. Dhyllon still did not know why Guardian had terminated his contract. Counsel offered to discuss the matter with Guardian further. (A. 26).

40. On December 4, 2019, Guardian responded. It explained that Guardian's Credentialing Appeals Committee had "reviewed" Dr. Dhyllon's letters. It "decided to uphold [Guardian's] previous decision to terminate your participation due to quality of care concerns." (A. 25).[3]

41. The letter did not explain anything about the substance of the dispute. Instead, it rejected his "appeal" without allowing Dr. Dhyllon to participate in the process or even to know what the allegations against him were.

42. At no point did Guardian allow Dr. Dhyllon to submit evidence or have a hearing on the "appeal." Guardian would never provide any additional information about the "appeal" before the Credentialing Appeals Committee.

43. On December 20, 2019, Dr. Dhyllon's counsel sent a final letter to Guardian. The letter set forth Dr. Dhyllon's legal position about why the report was improper. (A. 20–21).

44. Guardian did not respond.

---

[3] The December 4, 2019 letter was erroneously dated November 4, 2019. Guardian later acknowledged this mistake in a submission to NPDB. (A. 84).

**PROCEEDINGS BEFORE THE NPDB**

45. Dr. Dhyllon's counsel timely challenged Guardian's report through NPDB's dispute-resolution process. (A. 17–18).

46. The Division of Practitioner Data Bank ("DPDB") adjudicates reviews of NPDB reports on the Secretary's behalf.

47. On January 14, 2020, in accordance with NPDB guidance, counsel submitted two assertions of error for DPDB review:

> [a].  The report lacks an adequate "narrative description of the acts or omissions and injuries upon which the reported action was based" as 45 C.F.R.[§§] 60.15(b)(4)(i), 60.16(b) require. The report does not explain the underlying basis for the reporting entity's action, explaining only that it terminated the practitioner from network participation based on unspecified information obtained from the reporting entity['s] "query of the [NPDB] and/or the State Dental Board." The practitioner is aware of no prior NPDB or State Dental Board report.
>
> [b].  The reporting entity failed to provide any due process. The termination of network participation is therefore not a reportable event under 45 C.F.R. [§] 60.16. To be reportable, the reporting entity must provide due process.[4]

(A. 17).

48. Counsel also submitted a supporting legal memorandum and various exhibits. (A. 19–33).

49. On January 21, 2020, DPDB requested additional information from Guardian: "Please review your records and clarify for us the course of events that led to the filing of this Report. Provide details and any supporting documentation, including but not limited to a timeline

---

[4] The second dispute point also made legal argument about why this issue was within DPDB's authority to review. The quotation does not include the discussion of that issue, which this Complaint addresses later.

of events, investigation reports, meeting minutes, correspondence, and explanation/evidence of a search of historical documents, and any business records that may be relevant to a full and fair review of this dispute." (A. 41–42).

50. DPDB demanded the information within thirty days. (*Id.*).

51. On April 24, 2020, Guardian responded—64 days late, only after Dr. Dhyllon sent an additional letter raising Guardian's delay. (A. 49–76: response); (A. 47: letter).

52. Despite two extra months to find the relevant documents, Guardian provided only: (1) the meeting minutes of the initial decision to terminate the contract; (2) printouts establishing that Guardian knew that there was no adverse information from the NPDB or State Dental Board despite its claim that it terminated the contract because of such information; and (3) the correspondence already discussed. (A. 49–76).

53. Guardian did not provide any additional information about what "led to the filing" of the report with NPDB as DPDB had requested.

54. Nor did Guardian explain why its report inaccurately stated that there were prior adverse reports against Dr. Dhyllon in either the NPDB or on file with the State Dental Board.

55. On May 11, 2020, DPDB sent an additional letter to Guardian. Relevant here, the letter asked Guardian to "provide supporting documentation regarding the quality of care concerns described in the correspondence between Guardian and Dr. Dhyllon." (A. 78–79).

56. Guardian responded on July 17, 2020, again late — 47 days after the 20-day deadline ran.

57. Remarkably, even with the extra time, Guardian explained that it did not know the basis for its decision: "Regarding the supporting documentation for the quality of care concern, I have requested that from the committee; this is not something that is kept for general review. Once received, I will provide to the NPDB." (A. 84).

58. Guardian never explained the basis for the supposed "quality of care concern" and never submitted any additional documents to DPDB.

### THE DPDB'S DECISION

59. On August 24, 2020, the DPDB made its decision. The Secretary refused to remove the report. (A. 5).

60. While Guardian had submitted an inaccurate report claiming that there was adverse information against Dr. Dhyllon in either the NPDB or the State Dental Board's files, the DPDB did not think that mattered. Instead, DPDB was satisfied with Guardian's subsequent correspondence explaining that the real problem was not adverse information in these databases, but rather "quality of care concerns." (A. 4).

61. While the DPDB acknowledged that Guardian had to provide a "detailed narrative describing the acts or omissions of the subject of the report upon which the action is based," it found that Guardian did so by citing unspecified "quality of care concerns." (*Id.*).

62. To DPDB, it did not matter that Guardian never explained what the "quality of care" concerns were. Remarkably, DPDB's decision did not address the fact that Guardian admitted that it had no idea what those concerns were.

63. DPDB next refused to consider whether Guardian actually provided Dr. Dhyllon with pre-termination due process.

64. DPDB interpreted the NPDB regulations to preclude consideration of *whether* the subject of a report received due process even though the termination of Dr. Dhyllon's contract was reportable to NPDB — by definition — only if he received due process.

65. NPDB regulations restrict the grounds to challenge a report. Practitioners cannot simply say that what happened to them was wrong. They must identify an inaccuracy in the report or show that the report did not comply with the regulatory reporting requirements.

66. To that end, NPDB regulations explain that practitioners generally cannot complain of the due process that they were afforded. 45 C.F.R. § 60.21(c). For instance, where a medical board suspends a doctor's license, the doctor cannot collaterally challenge the propriety of the medical board's decision.

67. However, here, Dr. Dhyllon's contract termination was reported under a unique provision of NPDB's regulations.

68. There are eleven different categories of adverse actions against a practitioner that must be reported. 45 C.F.R. § 60.6–60.16.

69. The report at issue here was reported as an "Other adjudicated action[] or decision[]." (A. 3: Decision).

70. Unlike every category, something is a reportable "Other adjudicated action[] or decision[]" *only* if the practitioner received pre-deprivation due process. 45 C.FR. § 60.3 (defining the term). A decision that is not "adjudicated" with the necessary pre-deprivation due process is not reportable to NPDB by definition.

71. Even so, DPDB refused to consider whether the report against Dr. Dhyllon was adjudicated in conformance with NPDB regulations.

72. To reach that conclusion, DPDB relied solely on the general provision precluding review of the merits of an adverse decision against a practitioner without considering the definition of "Other adjudicated action[] or decision[]." (A. 4).

73. As an alternative ground for its decision on the due-process issue, DPDB explained that Dr. Dhyllon submitted letters to Guardian asking to "appeal," which it believed meant that a "due process mechanism" was available. (*Id.*).

74. DPDB did not address that its own regulations require pre-termination notice and hearing—not post-termination "appeal" without the opportunity to present evidence or to attend a

hearing.

75. The Secretary's final decision not to remove Guardian's report against Dr. Dhyllon is "agency action" within the meaning of the Administrative Procedures Act.

### COUNT I – VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

76. Dr. Dhyllon incorporates all preceding allegations of this Complaint.

77. The APA requires courts to set aside any "agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

78. The report was inaccurate because it stated that Guardian terminated Dr. Dhyllon's contract because of adverse information on file with the NPDB or State Dental Board when there was no such information.

79. The Secretary's regulations required him to correct any inaccurate report. 45 C.F.R. § 60.21(c), yet the Secretary failed to do so.

WHEREFORE, Dr. Dhyllon asks this Court to order the Secretary to remove the report from the NPDB database; to award attorney's fees and court costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and to order any other relief that this Court deems just and proper.

### COUNT II – VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

80. Dr. Dhyllon incorporates all preceding allegations of this Complaint.

81. The APA requires courts to set aside any "agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

82. Guardian's termination of Dr. Dhyllon's contract did not qualify as an "Other adjudicated action[] or decision" because Guardian failed to provide any pre-termination due process, much less process that complied with 45 C.F.R. § 60.3 and 42 U.S.C. § 11112(b).

83. The Secretary's regulations require him to remove reports that concern any action

that is not reportable to NPDB, 45 C.F.R. § 60.21(c), yet the Secretary failed to do so.

WHEREFORE, Dr. Dhyllon asks this Court to order the Secretary to remove the report from the NPDB database; to award attorney's fees and court costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and to order any other relief that this Court deems just and proper.

### COUNT III – VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

84. Dr. Dhyllon incorporates all preceding allegations of this Complaint.

85. The APA requires courts to set aside any "agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

86. The report did not contain a "detailed narrative describing the acts or omissions of the subject of the report upon which the action is based" as 45 C.F.R. §§ 60.16(b) and 45 C.F.R. § 60.15(b)(4)(i) require.

87. The report provided absolutely no information about what Dr. Dhyllon supposedly did wrong.

88. Guardian never provided that information during the DPDB proceeding.

89. The Secretary's regulations require him to remove reports that do not comply with reporting requirements, 45 C.F.R. § 60.21(c), yet the Secretary failed to do so.

WHEREFORE, Dr. Dhyllon asks this Court to order the Secretary to remove the report from the NPDB database; to award attorney's fees and court costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and to order any other relief that this Court deems just and proper.

Respectfully submitted,

_____
Donald Benedetto (Pa. I.D. No. 309199)
Daniel J. Auerbach (Pa. I.D. No. 316856)
Gamburg & Benedetto, LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102

*Counsel for Plaintiff*

Dated: September 18, 2020